J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Laurie Dahl Rea
State Bar No. 00796150
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX  76102
Telephone: (817) 877-8855
Facsimile:  (817) 877-4151
bforshey@forsheyprostok.com
llankford@forsheyprostok.com
lrea@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| IN RE: ) | CHAPTER 11 CASE |
| ) | |
| DUNCAN BURCH, INC., ) | CASE NO. 19-41699-elm-11 |
| ) | |
| DEBTOR. ) | **Expedited Hearing Requested** |
| ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR
TO PAY PREPETITION EMPLOYEE COMPENSATION AND
OTHER EMPLOYEE BENEFIT EXPENSES**

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

Duncan Burch, Inc. ("DBI", "Debtor" or "Company"), as debtor and debtor-in-possession, files this Motion for entry of an order authorizing the Debtor to pay prepetition employee compensation and related expenses (the "Motion").  In support of this Motion, the Debtor respectfully states as follows:

**SUMMARY**

By this Motion, the Debtor seeks the court's permission to: (a) pay its employees for prepetition wages, salaries, and commissions, including any amounts owed for recently used

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                                                              Page 1 of 13

vacation or sick leave pay; (b) to remit payroll taxes and garnishments withheld from its employees' wages and related amounts owed by the Debtor to the appropriate taxing authorities and parties; (c) permit its employees to use post-petition paid time off they accrued pre-petition; (d) pay employer required health insurance payments, and (e) to reimburse any *de minimis* prepetition reimbursements and to reissue payroll checks for work done within the 180 days prior to the petition date (collectively, the "Prepetition Workforce Obligations").  None of the payments by the Debtor for Prepetition Workforce Obligations will exceed the $12,850.00 priority claim cap provided in section 507(a)(4)(A) of the Bankruptcy Code.

## **PRELIMINARY STATEMENT**

1.     The continued loyalty of a debtor's workforce is a necessary component of any successful reorganization.  Under the best of circumstances, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees, most of whom are not familiar with the nuances that bankruptcy practitioners often take for granted.  Such stress and uncertainty often cause poor employee morale at a time when the debtor needs its workforce to be most loyal. Moreover, many employees live paycheck to paycheck and will suffer immediate adverse consequences if they fail to receive their full compensation.

2.     Honoring the Prepetition Workforce Obligations will minimize the hardship that employees will certainly endure if compensation or benefits are interrupted and will provide comfort to the Debtor's workforce that the reasonable expectations of compensation for services will be met.  As such, the Debtor seeks to continue paying Prepetition Workforce Obligations in the ordinary course and to direct the banks at which the Debtor maintains its applicable accounts to receive, process, honor and pay all related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable checks, drafts, wires or transfers were issued.

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                                                           Page 2 of 13

3.  The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor. A failure by the Debtor to honor its Prepetition Workforce Obligations to its employees, may result in the loss by the Debtor of its workforce at a time when it needs them most. Consequently, it is essential to the Debtor's continued operations that its employees receive assurance that they will receive all prepetition compensation without interruption.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are sections 105(a), 507(a)(4), and 541(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003(b) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.  On April 29, 2019 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.  The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this case.

## ABOUT THE COMPANY

7.  The Company is a Texas corporation founded in 1985 and headquartered in Dallas, Texas. The Company owns and operates the "gentleman's club" known as Michael's International and Chicas Locas (the "Club") in Houston, Texas. The Club employs approximately 100 employees, consisting of waitresses, bartenders, parking attendants, etc. In addition, the Club utilizes the services of approximately 70 to 100 performers who operate as independent contractors.

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                                 Page 3 of 13

8. The Club currently meets the definition of a "Sexually Oriented Business" ("SOB") under section 102.051 of the Texas Business & Commerce Code. *See* Tex. Bus. & Com. Code § 102.051. This designation is relevant under several municipal ordinances and state regulations, including certain state tax provisions. Importantly, the Debtor contends that it did not operate as an SOB during the period from May 8, 2008 through November 27, 2013 (the "Non-SOB Period"). Further, the SOB fees assessed by the State during the entirety of 2008 through 2014 (the "Assessment Period") are the subject of two (2) separate tax protest suits, including challenges to a Comptroller Rule under Texas administrative law and under the Federal and State Constitutions.

9. The Debtor is wholly owned by Burch Management Company, Inc. ("BMC"), which in turn is owned by Mr. Duncan Burch. Mr. Burch also owns 3221 Investments, Inc. ("3221"), which holds the liquor license for the sale of alcoholic beverages at the Club. The Company and 3221 are parties to a Concession Agreement concerning alcoholic beverage sales, whereby the Debtor is paid a percentage of liquor sale proceeds by 3221 to compensate the Debtor for providing concession services. In 2013, Mr. Burch purchased the building where the Club is located, along with all of the furniture and equipment therein. By doing so, Mr. Burch has been able to continue to lease the building and contents to the Debtor on terms that are more economically favorable to the Debtor than under the prior lease.

## EVENTS LEADING TO BANKRUPTCY

10. As noted above, the Debtor is involved in two (2) separate tax protest suits with the Texas State Comptroller concerning the assessment and collection of SOB fees during the Assessment Period. The Debtor contends that it did not operate as an SOB entity during the Non-SOB Period, and therefore is not obligated for any SOB fees assessed during that period. The State Comptroller disputes this contention. Further, the Debtor disagrees with the State's calculation of SOB fees for all other periods during the Assessment Period. The State Comptroller

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                     Page 4 of 13

contends that the Debtor is liable for unpaid SOB fees for the Assessment Period, including penalties and interest, in the approximate amount of $3.9 million, which the Debtor disputes.

11. Both of the state court suits are currently on interlocutory appeal and, together, raise multiple unresolved procedural, substantive and constitutional issues.  Among other things, the cases raise the issue of whether a taxpayer must first pay a disputed tax before requesting a judicial review of that assessed tax.[1]  This so-called "pay-to-play" requirement would require the Debtor, as a condition to disputing the $3.9 million in tax assessments, to pay that amount to the State.  This provision makes it virtually impossible for many taxpayers to challenge an improper tax assessment, regardless of the legality of the disputed tax.

12. In the instant case, the disputed SOB fees were first assessed at the agency level long after the tax periods to which they relate.  Indeed, the Company first learned about the prior-year tax assessments in late 2015 when the Comptroller seized about $43,000 from the Company's bank accounts.  The taxes were assessed even though, initially, businesses such as Debtor's were advised by the Comptroller that, as operated, the businesses were not subject to the tax.  The Comptroller changed course thereafter and began assessing SOB fees retroactively, going so far as to attempt to retroactively redefine the parameters of what constitutes an SOB through an amended rule (the "Amended Rule").  The Amended Rule has been invalidated, including based on constitutional grounds, by numerous state courts and one U.S. District Court.[2]  Likewise, the trial court presiding over the Debtor's tax protest suits determined that the Amended Rule is invalid, although the Comptroller has appealed that determination.

13. The Comptroller takes the position that, although the taxes relate to prior tax years

---

[1] A similar "pay-to-play" requirement is currently before the Texas Supreme Court in the appeal of *Hegar v. EBS Solutions, Inc.,* 549 S.W.3d 849 (Tex. App. – Austin 2018, pet. filed) (en banc).  Although the *Hegar v. EBS* appellate court determined that jurisdiction was predicated on prepayment of disputed taxes for some causes of action, the court also determined that suits seeking refunds of prepaid taxes are not the exclusive means of judicially challenging Comptroller actions.  *Id.,* at 832.  The Texas Supreme Court requested full merits briefing on November 16, 2018.

[2] *Tex. Entm't Ass'n v. Hegar*, No. 1:17- CV-594-DAE (W.D. Tex. Feb. 27, 2019).

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                                                                       Page 5 of 13

and are disputed, the Debtor must first pay the $3.9 million assessed tax before the Debtor may bring suit to challenge that tax.  Unsurprisingly, the Debtor does not have the financial wherewithal to buy access to the judicial system under the Comptroller's current rules and procedures.  For that reason, the Debtor, like many similarly-situated taxpayers, has challenged the validity and constitutionality of the State's pay-to-play provisions.

14.     Even though the disputed SOB fees have not yet been judicially determined, the Comptroller very recently has begun aggressive collection measures on the assessed $3.9 million in SOB fees.  On April 23, 2019, the Comptroller issued a freeze order on three (3) of the Debtor's bank accounts with a collective balance of approximately $42,000.00, and proceeded to attempt to levy on the account balances.  A few days later, on April 25, 2019, agents for the Comptroller appeared at the Club and seized all available DBI cash from the Debtor's cash registers.  Despite repeated pleas from Debtor's counsel, the Comptroller has refused to stand-down on collection activities, even for a brief period so that the parties may engage in good faith negotiations.  If the Comptroller were permitted to continue to seize available bank balances and funds on hand at the Club, the Debtor simply would be unable to operate and would be forced out of business. It is important to note that the Debtor is currently paying all debts, other than the disputed taxes from prior tax years, as they become due.  This is true, in fact, of all ongoing SOB fees, as and when assessed, as well as all other tax obligations to the State of Texas.  There is no dispute that the Debtor has fully paid all SOB fees from tax years 2015 forward.  This bankruptcy case was filed as a last-resort measure to prevent the Comptroller's aggressive and counterproductive collection activities from putting the Debtor out of business, to the detriment of all parties in interest.  This bankruptcy filing is intended to allow the Debtor and Comptroller to fully resolve and liquidate any existing SOB fee claims in an orderly fashion, either through the judicial process or through agreement, while preserving the Debtor's value for the benefit of all creditors.  Once the Comptroller's claim is liquidated, the Debtor expects to be able to propose a Plan of

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                                                          Page 6 of 13

Reorganization that will allow the Debtor to pay all legitimate claims in full.

## THE DEBTOR'S WORKFORCE

15. The Debtor has approximately 111 employees on the next payroll, which include managers, waitresses, bartenders, floor persons, hostesses, cleaners, disk jockeys, bar backs, bus boys and cooks (the "Employees"). The managers are salaried employees, with salaries in the range of $31,200 to $36,400 annually. The remaining Employees are paid on an hourly basis.

16. The Debtor also uses independent contractors, which are the entertainers (*i.e.* dancers or performers) in the Club (the "Entertainers"). Between 75 and 100 Entertainers work in the Club, but on an average day, 65 Entertainers perform. The Entertainers pay the Debtor a service fee for each day they work at the Club, and they retain all tips they receive from customers. The Debtor does not make any payments or provide any benefits to the Entertainers other than redemption of "dance dollars" purchased by customers and given to the Entertainers. A dance dollar is essentially a voucher or cash substitute that a customer can purchase with a credit card, then give to an Entertainer as a tip. The Entertainers then redeem them for cash from the Club. By separate motion, the Debtor will ask for permission to redeem prepetition dance dollars during the postpetition period.

## THE PREPETITION WORKFORCE OBLIGATIONS

17. The Debtor pays its Employees every two weeks on Friday. The next payroll is due on Friday May 3, 2019 (the "May 3 Payroll") and covers the period from April 7, 2019 to April 20, 2019, all of which is prepetition time. The payroll due on May 17, 2019 (the "May 17 Payroll") also includes some prepetition time, namely, from April 21, 2019 through April 28, 2019.

18. The May 3 Payroll includes is $28,502.84 in net payments to Employees, $218.21 in wage garnishments, and $11,530.62 in withheld taxes and employer paid taxes. The Debtor is seeking permission to pay those amounts on May 3, 2019.

19. The Debtor estimates that the prepetition portion of the May 17 Payroll includes

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                   Page 7 of 13

$16,500 in net payments to Employees, $218 in wage garnishments, and $6,500 in withheld taxes and employer paid taxes. The Debtor is seeking to pay those amounts on May 17, 2019.

20. On occasion, an Employee will forget to cash a paycheck. Generally, this happens with waitresses who receive a small hourly wage (thus a small paycheck) in addition to tips. The Debtor's payroll checks expire in 60 days. To the extent the Debtor is presented with an uncashed paycheck earned within the 180 days before the Petition Date and that would not result in an Employee receiving more that $12,850 in prepetition wages, the Debtor seeks permission to reissue those paychecks. The Debtor believes this will represent a *di minimis* amount.

21. The Debtor is required to pay insurance benefits under the Affordable Care Act. The Debtor contracts with Operate HR to handle this insurance obligation and pays it fees and premiums. Operate HR pays premiums to Blue Cross Blue Shield. The monthly premium/fee to Operate HR is approximately $2,200 and is payable on the 20th day of the month. As of the Petition Date, the Debtor owed its April payment and seeks to pay that amount post-petition. None of the Debtor's Employees have opted-in to the coverage (which would require them to contribute additional premiums), but the Debtor is required to make the payment nonetheless. Accordingly, the Debtor seeks permission to continue making the premium payments in the ordinary course of business.

22. Managers are permitted paid time off, which varies based on years of employment. The Debtor employs 9 managers. Hourly employees are not provided with paid vacation or sick leave. The Debtor seeks permission to permit salaried Employees to use prepetition-earned paid time off post-petition in the normal course of business.

## THE DEBTOR'S PAYROLL PROCESS

23. The Debtor, with the assistance of BMC personnel, processes its own payroll through payroll checks. Payroll is made every other Friday two weeks in arrears. On or before the Wednesday following each Friday payroll, the Debtor transfers all withheld taxes and

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses     Page 8 of 13

employer paid taxes to the proper taxing authority. The Debtor also sends any wage garnishments to the appropriate payee. The Debtor intends to continue this practice during its bankruptcy case.

## RELIEF REQUESTED

24. By this Motion, the Debtor seeks authority to pay outstanding Prepetition Workforce Obligations and to direct, Vision Bank, the bank at which the Debtor maintains its applicable accounts, to receive, process, honor and pay all related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable checks, drafts, wires or transfers were issued. Specifically, the Debtor seeks permission to (a) pay the Employees for prepetition wages, salaries, and commissions, including any amounts owed for recently used vacation or sick leave pay; (b) to remit payroll taxes and garnishments withheld from Employees' wages and related amounts owed by the Debtor to the appropriate taxing authorities and parties; (c) permit its salaried Employees to use post-petition paid time off they accrued pre-petition; (d) pay employer required health insurance payments, and (e) to reimburse any *de minimis* prepetition reimbursements and to reissue payroll checks for work done within the 180 days prior to the Petition Date. The Debtor also seeks entry of any other orders necessary to grant the relief requested herein.

25. The Debtor may determine that there are additional *de minimis* prepetition employment-related obligations, which have not been identified in the Motion. Accordingly, the Debtor request authority to pay any such additional obligations up to an aggregate amount of $5,000 upon five (5) business days' prior written notice to counsel to any statutory creditors' committee and the United States Trustee, setting forth the nature and amount of the additional obligation sought to be paid. If an objection is filed within such five-day period, and such objection is not resolved consensually, the Debtor will seek authority from the Court to make such payment.

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                              Page 9 of 13

The Debtor reserves the right to seek authority from the Court to pay any obligations in excess of the aforementioned limit.

## BASIS FOR RELIEF

26. Section 507(a) of the Bankruptcy Code provides that employee compensation, subject to certain conditions, are afforded priority distribution up to $12,850. *See* 11 U.S.C. § 507(a)(4). Moreover, section 507(a)(4) priority claims are entitled to payment in full under a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B). Accordingly, as the Debtor's Employees may be entitled to a priority distribution for prepetition amounts owed, the relief requested herein for employee wages and salary should primarily affect the timing of payment of employee claims rather than their treatment for distribution purposes, and should neither prejudice general unsecured creditors nor materially affect the Debtor's bankruptcy estate.

27. Additionally, under section 105(a) of the Bankruptcy Code, courts have permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *In re Tusa-Expo Holdings, Inc.*, 2008 Bankr. LEXIS 2852, *6-11 (Bankr. N.D. Tex. 2008); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 n. 17 (Bankr. N.D.Tex. 2002); s*ee also, In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D.La. 1989).

28. The Debtor's Employees are an essential component of a successful bankruptcy. Many of them live from paycheck to paycheck, relying exclusively on receiving their full compensation to pay their daily living expenses. As a result, the Employees will be exposed to significant financial hardship if the Debtor is not permitted to honor the unpaid Prepetition Workforce Obligations, likely impairing workforce morale and welfare at this critical time.

29. Amounts withheld from Employees' paychecks, in many cases, employee earnings specifically designated by employees, or, in the case of garnishments, by judicial authorities, to be deducted from employee paychecks and paid accordingly. The failure to make these payments will result in hardship to certain employees. Moreover, if the Debtor is unable to remit

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses　　　　　　　　　　　　　　　　　　　　　　　Page 10 of 13

certain of these amounts, the Employees could face legal action and/or imprisonment. Pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

30.     The Debtor submits that the request to remit payroll taxes is necessary and appropriate to carry out section 541(d) of the Bankruptcy Code. The Debtor believes it holds the Payroll Taxes in trust for the taxing authorities. Therefore, those funds are not property of the estate under section 541(d) because the Debtor holds mere legal title and no equitable interest in those funds. *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 66-67 (1990) (holding that payroll taxes withheld from employee wages are not property of the estate because they are subject to a trust for the benefit of the United States under 26 U.S.C. § 7501); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3rd Cir. 1994) (holding that state law requiring employer to withhold city income tax from employee wages created a trust for the benefit of the city). Moreover, the Debtor's officers and directors may be held personally liable for the Payroll Taxes. See 26 U.S.C. § 6672.  To the extent that any of the Payroll Taxes remain unpaid by the Debtor, the Debtor's officers and directors may be subject to collection efforts that would distract the Debtor and its officers and directors, to the detriment of all parties in interest in this chapter 11 case.

### **DIRECTION TO DEBTOR'S BANK**

31.     To give effect to the requested relief, the Debtor requests that the Court provide specific authorization and direction to Vision Bank, and any other applicable banks, to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers made on account of the Prepetition Workforce Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check, draft, wired or transfer was issued.

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                                                            Page 11 of 13

## SATISFACTION OF BANKRUPTCY RULE 6003
## AND WAIVER OF BANKRUPTCY RULE 6004

32. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm..." FED. R. BANKR. P. 6003(b). For the reasons described herein, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

33. The Debtor submits that the total amount to be paid for Prepetition Workforce Obligations if the requested relief is granted is *de minimis* compared with the importance and necessity of the employees and contractors to the Debtor and the insurance to the Debtor's operations.

34. Given the emergency need for relief requested herein, and to implement the foregoing successfully, the Debtor seeks a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## LIMITED NOTICE

35. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor; and (iii) parties requesting notice; all as set forth below. The Debtor submits that no further notice need be provided.

36. The pleadings in this bankruptcy case and supporting papers are available on the Bankruptcy Court's website at https://ecf.txnb.uscourts.gov/. You can request any pleading you need from counsel for the Debtor at: Forshey & Prostok, LLC, c/o Linda Breedlove, 777 Main Street, Suite 1290, Fort Worth, Texas 76102 (lbreedlove@forsheyprostok.com).

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                    Page 12 of 13

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of an order granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: April 30, 2019.

Respectfully submitted,

/s/ Laurie Dahl Rea
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Laurie Dahl Rea
State Bar No. 00796150
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151

PROPOSED ATTORNEYS
FOR THE DEBTOR AND DEBTOR IN
POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the office of the United States Trustee for the Northern District of Texas, the holders of the twenty (20) largest unsecured claims against the Debtor, and parties filing a notice of appearance via ECF electronic Notice, if available, and via United States Mail, first class postage prepaid on April 30, 2019.

/s/ Laurie Dahl Rea
Laurie Dahl Rea

L:\BFORSHEY\Duncan Burch (WO) #5835\Pleadings\Motion to Pay Wages 4.26.19.docx

Debtor's Motion for Entry of an Order Authorizing the Debtor to Pay
Prepetition Employee Compensation
and Other Employee Benefit Expenses                                      Page 13 of 13